IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-02580-PAB

PATIENCE E. WILLIAMS,

        Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

**ORDER**
_____

      This matter is before the Court on plaintiff Patience E. Williams' complaint

[Docket No. 1], filed on September 30, 2011.  Plaintiff seeks review of the final decision

of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for

disability insurance benefits and supplemental security income under Titles II and XVI

of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court

has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.  BACKGROUND

      On April 3, 2009, plaintiff applied for disability benefits under Title II and Title XVI

of the Act.  R. at 9.  Plaintiff alleged that she had been disabled since December 31,

2004.  *Id*.  After an initial administrative denial of her claim, plaintiff received a hearing

before an Administrative Law Judge ("ALJ") on May 27, 2011.  *Id*.  On June 15, 2011,

_____

     [1] The Court has determined that it can resolve the issues presented in this matter
without the need for oral argument.

the ALJ issued a decision denying plaintiff's claim.  *Id*. at 20.

The ALJ found that plaintiff had the following severe impairments: "non-specific myofascial pain syndrome, depressive disorder–NOS, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), personality disorder–NOS, and polysubstance dependence."  R. at 12.  The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 13, and ruled that plaintiff had the residual functional capacity ("RFC") to

> lift and carry 20 pounds occasionally or 10 pounds frequently.  She can stand or walk at least 2 hours in an 8-hour workday, with normal breaks.  She can sit about 6 hours in an 8-hour workday, with normal breaks.  She can push and pull to the extent of her lifting and carrying capacity.  The claimant can occasionally climb ramps, stairs, ladders, ropes, or scaffolds.  She can frequently balance, stoop, kneel, crouch, or crawl. Mentally, the claimant can perform the basic mental demands of competitive remunerative, unskilled work, including the ability, on a sustained basis, to understand, remember, and carry out simple instructions, follow ordinary routines, and perform simple decision making.  The claimant can respond appropriately to usual work situations and to changes in a routine work setting.  However, the claimant can only have limited interpersonal interactions.  The claimant can accept supervision and relate to co-workers, so long as the interpersonal interaction is not frequent or prolonged.  The claimant should have minimal to no interaction with the general public.  The job duties should primarily involve working with things, rather than interacting with other people.

R. at 13-14.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  R. at 19.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1.  Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C.  The ALJ's Decision

#### 1.  *Substance Abuse*

Plaintiff argues that the ALJ erred in not applying the analysis required by 42 U.S.C. § 423(d)(2)(C) to determine whether her substance abuse was a material factor contributing to her disability.  Docket No. 14 at 29.

The Social Security regulations provide that "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 404.1535(a).  As the Tenth Circuit explained in *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001), "a finding of disability is a condition precedent to an application of § 423(d)(2)(C)."  Accordingly, the Commissioner must first determine whether a claimant is disabled and, upon a finding that she is, determine whether she would still be disabled if she stopped abusing substances.  *Id*.  If her remaining impairments would not be disabling absent her substance abuse, then that abuse is a "contributing factor material to the finding of disability." *Id*. at 1214-15.  "The ALJ cannot begin to apply § 423(d)(2)(C) properly

when . . . he has not yet made a finding of disability." *Id*. at 1215.

In this case, the ALJ "considered all symptoms," including plaintiff's alcohol and cocaine abuse, and found that plaintiff is not disabled because she has the RFC to perform unskilled, light work.  R. at 14, 20.  The ALJ specifically considered whether plaintiff's abuse of alcohol and cocaine rendered her disabled.  He found that when the plaintiff drinks heavily, "her symptoms of depression worsen, and this has often led to suicidal ideation and hospitalization."  R. at 16.  He also stated that her "suicide attempts represent an acute and temporary worsening of her depression secondary to her alcohol use."  *Id*.  However, he concluded that "these periodic binges have rapidly responded to detoxification and treatment.  They do not establish 12 continuous months of disability."  *Id*.  As the ALJ found that plaintiff is not disabled, even taking into account her struggles with substance abuse, he did not make the threshold determination necessary before applying § 423(d)(2)(C).  *See Drapeau*, 255 F.3d at 1214-15.

As the ALJ did not make an initial finding of disability, there was no basis for applying § 423(d)(2)(C).

## 2. *Credibility Determination*

Plaintiff argues that the ALJ did not sufficiently consider her testimony of subjective pain or the evidence that she is on prescription pain medication in determining the extent of her RFC.  Docket No. 14 at 34-35.  In addition, she argues that the ALJ improperly discounted her credibility with respect to her testimony that she is in pain.  Docket No. 14 at 36-39.  Finally, she argues that the ALJ did not give proper

weight to the opinion of Dr. Vincent Walsh as her treating psychologist.  Docket No. 14 at 39-41.

The Act provides that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."  42 U.S.C. § 423(d)(5)(A).  To show that she is disabled, a claimant must produce objective medical evidence, "which, when considered with all evidence required to be furnished under this paragraph," would support a conclusion that the individual is disabled.  *Id*.

The Tenth Circuit has interpreted § 423(d)(5)(A) to mean that a claimant "must demonstrate more than a *potentially* pain-causing impairment" before the ALJ is required to weigh all the evidence, including subjective testimony.  *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987) (emphasis in original).  However, it found that "the statute requires only a loose nexus between the proven impairment and the pain alleged."  *Id*. at 164.  The court noted that "the absence of an objective medical basis for the degree or severity of pain may affect the weight to be given to the claimant's subjective allegations of pain," but it also recognized that an impairment likely to cause some pain could lead to disabling pain in some claimants.  *Id*. at 165.  Accordingly, the court later explained that, where a claimant establishes the existence of a medically determinable impairment that can cause and has caused pain, "a determination of no disability cannot be made without a full evaluation of all subjective and objective evidence of pain."  *Huston v. Bowen*, 838 F.2d 1125, 1130 (10th Cir. 1988).

The evaluation of subjective testimony of pain "ultimately and necessarily turns on credibility."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).  In assessing

7

credibility, an ALJ should consider "1) whether the objective medical evidence establishes a pain-producing impairment; 2) if so, whether there is a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and 3) if so, whether considering all the evidence, claimant's pain is in fact disabling." *Id*. at 909 n.3 (citing *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995)).  An ALJ need not, however, conduct a "formalistic factor-by-factor recitation of the evidence" so long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Id*. at 909.

In considering medical opinions, an ALJ must give controlling weight to the opinion of a treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  If not given controlling weight, the opinion of a treating physician is assessed based on the length of the treatment relationship, frequency of examination, nature and extent of treatment relationship, support for the opinion, consistency with the record as a whole, the physician's specialization, and any other relevant factors.  20 C.F.R. §§ 404.1527(c)(2)-(6).

In this case, the ALJ's decision indicates that he considered plaintiff's testimony regarding her pain:

> The claimant testified to having chronic pain that is constant.  She stated her legs are the worst, and she has had to live with pain in her legs all her life.  She also described having pain in her wrists and, more recently, in her right shoulder. . . . The claimant testified her sleep is disturbed due to pain, and she is up and down all night, resulting in fatigue during the day.

R. at 14.  Following the analytical process laid out in *Kepler*, the ALJ found that the

8

objective medical evidence establishes that plaintiff suffers from a non-specific myofascial pain syndrome, R. at 18, and that there was a nexus between that impairment and plaintiff's subjective report of pain.  R. at 17-18.

However, the ALJ concluded that plaintiff was not fully credible and that the evidence, taken together, did not support a finding of disability.  R. at 18-19.  The ALJ explained that his conclusion was based on inconsistencies between plaintiff's testimony and (1) the objective medical evidence; (2) plaintiff's testimony regarding her daily activities; (3) the opinions of plaintiff's consulting physicians, Drs. Michael Weaver and James Dyde; and (4) observations of plaintiff during examinations and at the administrative hearing.  *Id*.

First, the ALJ considered the fact that medical testing–including x-rays, magnetic resonance imaging, and "detailed examinations"–did not reveal any objective physical basis for plaintiff's report of pain.  R. at 17-18.  Second, the ALJ considered plaintiff's statements to Dr. Brett Valette and her testimony at the administrative hearing indicating that she performs simple, unskilled tasks on a regular basis, including housework, shopping, cooking, laundry, taking public transportation, and managing her finances.  R. at 16.  Third, the ALJ considered the opinions of plaintiff's treating and consulting physicians.  The ALJ reviewed Dr. Robert Keeley's opinion that plaintiff is disabled because of post-traumatic stress disorder, depression, and arthritis.  R. at 16.  The ALJ also reviewed the evidence of Dr. Walsh, plaintiff's treating counselor, who stated that plaintiff has a history of suicide attempts and suffers from post-traumatic

stress disorder, depression, self-mutilation, alcohol dependence, and cocaine abuse.[2]
*Id*.

The ALJ found that the opinion of Dr. Dyde, a consulting physician, carried great weight because it was well supported and consistent with the record as a whole.  R. at 15-16.  Dr. Dyde found that the opinions of Drs. Keeley and Walsh were brief, conclusory, and unsupported by medical evidence.  *Id*.  For example, Dr. Walsh's opinion did not include any specific limitation of functioning and simply concluded that plaintiff is disabled, a determination that is reserved to the Commissioner.  R. at 16-17; *see* R. at 250 (plaintiff "suffers from significant chronic psychological impairment, which has prevented her from keeping gainful employment for a significant period of time."); *see also* 20 C.F.R. § 404.1527(c).  Likewise, the ALJ found that Dr. Keeley's opinion lacked "medical findings or narrative reasoning to support his opinion," combining plaintiff's medical and physical impairments in his analysis without providing a specific limitation for either one.  R. at 17; *see* R. at 416-17.  There is substantial evidence supporting the ALJ's conclusion that Dr. Walsh's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [consistent] with the other substantial evidence in [the] case record," and, therefore, the ALJ was not required to accord it controlling weight.  20 C.F.R. § 404.1527(c)(2).

The ALJ also accepted the opinion of consulting physician Dr. Weaver, finding that it was well reasoned and well supported.  R. at 17.  Dr. Weaver performed a

---

[2] Plaintiff asserts that the ALJ did not sufficiently consider Dr. Walsh's treating notes.  Docket No. 14 at 39.  However, as the Commissioner points out, these notes are almost entirely illegible.  *See* Docket No. 6-9 at 11-73. R. at 418-80.

number of medical tests on claimant and made no objective findings that would support plaintiff's reported physical limitations. *Id*.; *see* R. at 548 (plaintiff "has chronic diffuse musculoskeletal pains, with x-rays, MRIs and detailed exams all completely normal except for some subjective tenderness . . . there is no objective evidence of arthritis, fibromyalgia or any other disorder"). Dr. Weaver found that plaintiff's symptoms were disproportionate to the record medical evidence and thus that she was not entirely credible. R. at 17, 551 ("the symptoms are disproportionate to objective evidence in the [record], which shows essentially normal examinations. Therefore the symptoms are considered less than fully credible").

Finally, the ALJ considered testimony indicating that plaintiff did not appear to be in pain. For example, Dr. Valette reported that, during a psychological examination on June 29, 2009, plaintiff did not appear to be in pain. R. at 15, 414. In addition, a Social Security representative reported that, during an interview on April 17, 2009, plaintiff "showed no physical difficulties." R. at 17, 178. Likewise, the ALJ observed that, at the administrative hearing, plaintiff's movements appeared fluid and normal and she "did not demonstrate any pain behaviors that would indicate to a lay person that [s]he was experiencing any pain." R. at 17-18.

Plaintiff asserts that the ALJ did not sufficiently consider her subjective evidence of pain, but she does not demonstrate that his reasoning was faulty or offer citations to the record to show that he misrepresented the evidence in his decision. For example, plaintiff states that the ALJ failed to consider her prescription pain medication and how its side effects contribute to her impairment. Docket No. 14 at 34. However, she does not support this assertion with record evidence. *See id*. In addition, plaintiff repeatedly

cites Dr. Dyde's finding that she has an affective disorder characterized by decreased energy, difficulty in concentrating, and thoughts of suicide, as well as a generalized anxiety disorder characterized by recurrent recollections of trauma.  R. at 227, 229. However, in the same report, Dr. Dyde concluded that plaintiff's functional limitations were mild to moderate and that "[t]here is no medical evidence for the period of [disability] 12/04 until 12/06."[3]  R. at 236.  Thus, Dr. Dyde's report does not support plaintiff's assertion that the ALJ's decision lacked substantial evidence or overlooked critical evidence.  See Docket No. 14 at 38-39.

The ALJ's decision in this case demonstrates that he undertook "a full evaluation of all subjective and objective evidence of pain" and that his conclusion was supported by substantial evidence.  Huston, 838 F.2d at 1130.  It is not the role of the Court to "reweigh the evidence or retry the case."  Flaherty, 515 F.3d at 1070.

### 3. Vocational Expert

Plaintiff argues that the ALJ improperly omitted statements that the VE made in response to questions posed by plaintiff's attorney.  Docket No. 14 at 28-29.

"Testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence."  Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996). A properly phrased hypothetical question is one that "include[s] all–and only–those impairments borne out by the evidentiary record."  Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995).  Thus, an ALJ is "not required to accept the answer to a hypothetical question that include[s] limitations claimed by plaintiff but not accepted by the ALJ as

---

[3] Accordingly, plaintiff's assertion that Dr. Dyde's report indicates she meets one of the listed impairments is incorrect.  See Docket No. 14 at 35.

supported by the record." *Id*.

Plaintiff criticizes the exclusion of the following exchange between plaintiff's counsel and the VE at the hearing:

Q  Mr. Rower, how much work would a person be able to miss, and still be able to hold these jobs full-time that you just mentioned, the light jobs?

A  Well, over the last year plus, I've become a good bit more conservative in that particular opinion, based upon unpublished studies by my contemporaries.

Q  Um-hum.

A  I think we're reasonable looking now more accurately at one to one and a half days per month.  And sometimes, in as short of time as one month, typically two to three months, the employer typically lets those people go, indicating they're unable to successfully perform their work in the competitive environment.

Q  Okay.  And if a person required–well, that kind of answers it, doesn't it?  If a person–but if a person–and, and if a person required to have naps during the workday beyond the lunchtime, that–would that just reinforce the fact that they could not keep those jobs?

A  Yes.

Docket No. 14 at 28-29; R. at 54-55.  The evidence in the record does not, however, support this limitation.  Docket No. 14 at 28-29.  Moreover, this limitation was not included in the ALJ's conclusion regarding plaintiff's RFC.  *See* R. at 13-14.

Thus, since the question at issue included limitations not borne out by the evidentiary record, the ALJ was not required to accept it.  *See Bean*, 77 F.3d at 1214.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled

is AFFIRMED.

DATED March 29, 2013.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge